**EDELSBERG LAW, P.A.**
Scott Edelsberg (SBN 330990)
1925 Century Park East, Suite 1700
Los Angeles, California 90067
Telephone: (305) 975-3320
scott@edelsberglaw.com

*Attorneys for Plaintiff and the Putative Class*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DRAKE, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>APPLEBEE'S RESTAURANTS, LLC,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff Michael Drake ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action complaint against Defendant Applebee's Restaurants, LLC ("Defendant" or "Applebee's"). Plaintiff makes the following allegations based upon, *inter alia*, the investigation made by his counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiff which are based on his personal knowledge and alleges the following:

## <u>PRELIMINARY STATEMENT</u>

1.    This is a proposed class action seeking monetary damages, restitution, and injunctive and declaratory relief from Defendant Applebee's arising from its assessment of deceptive and unfairly undisclosed fees ("Extra Fees") on food delivery

orders through its website and app. These Extra Fees include Applebee's purported "Delivery Charge", "Service Fee", and "CA Delivery Surcharge" .

2.    Applebee's is one of the world's largest casual dining brands, with over 1,500 restaurant locations in 11 countries and territories.[1]

3.    When consumers seek to order food for delivery through Applebee's website and/or app, Applebee's prominently advertises pricing that is drastically altered by the time the payment screen populates. On the final payment screen, consumers are surprised as Applebee's surreptitiously adds a host of erroneous Extra Fees to all food delivery orders.

4.    Applebee's deceptively adds the "Delivery Charge" and "Service Fee" to all food delivery orders of consumers nationwide, and the "CA Delivery Surcharge" Fee to all food delivery orders in California.

5.    As discussed in detail herein, the assessment of these Fees is deceptive and unfair because: a) Applebee's does not disclose these added Extra Fees or their amount until the very last step in the multi-step purchasing process; b) the Extra Fees themselves are deceptive and misrepresentative both by name and description; and c) the Fees do not provide any additional service or benefit to consumers.

6.    For example, the "CA Delivery Surcharge", which is tacked on to every delivery order in California is deceptive and unfair because it is presented to consumers as a mandatory, government-imposed fee on the consumer. However, this Fee does not correspond to any governmental fee imposed by California law, nor does it provide any additional service or benefit to consumers.

7.    Instead, the "CA Delivery Surcharge" and "Service Fee" fees are classic examples of "junk fees."

8.    By virtue of the "CA Delivery Surcharge" being added only to delivery orders in California, and not orders for pick-up, the fee is, by definition, a delivery fee.

---

[1] https://www.applebees.com/en/about-us (last accessed April 23, 2025)

Nevertheless, Defendant charges consumers a *separate* "Delivery Charge," which shows that Defendant is merely requiring consumers to pay a second payment—in the form of a junk fee—for the service that Applebee's already purports to be providing, and for which consumers are already paying.

9.    Similarly, the "Service Fee" is another classic "junk fee" that does not correspond to any actual extraneous service which would reasonably be separated from the all-in price i.e. the preparation of the food consumers are ordering. Arguably, the "services" involved in consumer purchases made in-store at Defendant's locations involve far more than those required for a delivery order, yet, upon information and belief, Defendant does not charge a "Service Fee" for its in-store purchases.

10.    Finally, the "Delivery Charge" is deceptive and unfair because Applebee's prominently advertises its food delivery services on its website and app but fails to disclose the cost of delivery until the very last step in the purchasing process. By failing to disclose its pricing upfront, Defendant undermines fair competition and gains an unfair advantage over its competitors who provide full upfront pricing, allowing consumers to adequately price compare when making consumer purchasing decisions.

11.    As a result, Applebee's misrepresents the actual costs of food and its delivery service, along with the presence and nature of the Extra Fees to consumers.

12.    Applebee's omits and conceals material facts about Applebee's food and delivery service, never once informing consumers in any disclosure, at any time, that they will incur on all orders a "Delivery Charge" and "Service Fee", and on delivery orders in California, an additional "CA Delivery Surcharge."

13.    Hundreds of thousands of Applebee's customers, like Plaintiff, have been assessed hidden fees for which they did not bargain.

14.    Defendant does everything it can to hide the Extra Fees on its checkout pages. Frequently, this works: consumers do not even notice that the total amount they

1    are being charged for the order has increased at this late stage of their purchase.

2        15.    Consumers, like Plaintiff, reasonably understand Applebee's advertised

3    prices to disclose the total cost they will pay for their food and to have their food

4    delivered.

5        16.    Moreover, even consumers who notice the Extra Fees often still go

6    through with the purchase. Having spent time browsing the menu, selecting the food

7    items of their choice, and continuing through the multi-step purchase process,

8    consumers are materially disincentivized from starting over and researching whether

9    there may be another comparable option for food delivery.

10        17.    It is false and deceptive for Defendant to surreptitiously add Extra Fees at

11    the end of the purchasing process, especially where it offers no explanation of these

12    Extra Fees at any time during the checkout process. The Extra Fees are added without

13    comment or description as inconspicuous line items, just before a purchase is

14    completed, after a multi-step process without any mention of these charges, and after

15    consumers have been drawn in by the initially-displayed lower price.

16        18.    These Extra Fees are simply a means for Defendant to misrepresent the

17    true price of its food and delivery service and reap additional profits.

18        19.    By unfairly obscuring its true costs, Applebee's deceives consumers and

19    gains an unfair upper hand on competitors that fairly disclose their true prices and fees.

20        20.    By hiding the mis-named and deceptive fees until the very last step of the

21    sale, Defendant has raked in millions of dollars by mispresenting the costs of its food

22    and delivery at the expense of consumers stuck with the bill after being duped.

23        21.    As a result of Defendant's unfair and deceptive conduct, Plaintiff and the

24    proposed Classes have suffered damages. They paid for food delivery orders they

25    otherwise would not have bought and overpaid fees they otherwise would not have

26    paid, had they not been drawn in by Defendant's deceptive bait-and-switch scheme.

27        22.    Plaintiff seeks damages and, among other remedies, injunctive relief that

28

fairly allows consumers to decide whether they will pay Applebee's surreptitiously added-on fees.

## **PARTIES**

23.     Plaintiff Michael Drake is a resident and a citizen of Napa, California.

24.     Defendant Applebee's Restaurants, LLC is a limited liability company incorporated in Delaware and headquartered in Pasadena, California.

## **JURISDICTION AND VENUE**

25.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2), because the matter in controversy exceeds $5,000,000, exclusive of interest and costs, and is a class action in which at least one member of the Nationwide Class is a citizen of a different State than Defendant. The number of members of the proposed Class estimated to be in the tens, if not hundreds, of thousands. 28 U.S.C. § 1332(d)(5)(B).

26.     This Court has personal jurisdiction over the Defendant because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District.

27.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant does business in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## **FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**A.     Applebee's Omits and Conceals Material Facts About the Costs of Its Food and Delivery**

28.     Because the "Delivery Charge", "Service Fee", and "CA Delivery Surcharge" are not disclosed until the final payment screen, Applebee's misrepresents the cost of the food on which the consumer relies in placing an order.

29.    By unfairly obscuring the true cost of purchases, Applebee's deceives consumers and gains an unfair upper hand on competitors that fairly disclose the price of their products and services, including mandatory fees. Indeed, other major fast-food chains in the U.S. do not assess fees outside of those properly disclosed at the outset of a consumer's order.

30.    As a result, the disclosed item cost on Applebee's website and app is not accurate.  The *actual* cost for food and food delivery is the advertised price *plus* the "Service Fee", "Delivery Charge", and "CA Delivery Surcharge" that Applebee's deceptively adds late in the ordering process.

31.    Applebee's does not inform consumers the true costs of its food and delivery service, and it misrepresents the price of any given food item, when in fact those costs are actually higher.

32.    Moreover, the additional fees assessed are never reasonably disclosed to consumers until they show up as a line item in checkout screen—after the purchase process is largely complete. This process fails to provide an adequate advance warning to customers that additional fees will be imposed on their purchases.

33.    Many consumers do not notice these fees are being added to their order. Others believe that they have no choice but to pay these fees. And others still notice the previously undisclosed fees but decide to go through with the purchase anyway unsure of how it can be removed from their Cart after it was automatically added: they have already invested substantial time and effort inputting their information into the Applebee's system. Rather than starting over and research whether there is a way to avoid these fees. The deceptive checkout practice has done its job and diverted the sale to Applebee's.

34.    In any of these situations, the result is the same: a consumer who otherwise would have found a way to pay without paying the fees, ends up paying the fees. Defendant profits; Plaintiff and the class lose profits.

i.      **Defendant misleads consumers by failing to disclose the cost of its Delivery Fee**

35.    Reasonable consumers understand that choosing a delivery option, as opposed to picking up an order themselves, will likely incur an additional charge.

36.    However, as illustrated by the California Attorney General's commentary on the "Honest Pricing Law", SB 1524, it is "illegal for most businesses to advertise or list a price for a good or service that does not include all required fees or charges… Put simply, the price a Californian sees should be the price they pay."[2]

37.    Applebee's prominently advertises their delivery services without mentioning any fees associated with the delivery. Significantly, Applebee's also fails to inform consumers of the actual price they will pay for such delivery services.

38.    The disclosure of additional fees immediately before a consumer finalizes a transaction does not comply with the Honest Pricing Law. Nor is it compliant to advertise a price that is less than what a consumer will actually have to pay, even if Defendant had disclosed generally that a charge is incurred for delivery.

39.    Moreover, by assessing a "Delivery Charge" on all delivery orders, along with a "CA Delivery Surcharge" on all California delivery orders, the listed "Delivery Charge" is false and intentionally misleading because it does not even represent the true added costs of delivery. For California purchasers, they are instead deceptively assessed two delivery charges for the same provided service.

40.    Defendant's omission of the cost of their delivery service is misleading because Applebee's fails to inform consumers of the true cost of their purchase until the very last stage of the checkout process, in violation of California law.

ii.      **Defendant's Service Fee is a "Junk Fee" that provides no benefit to consumers**

41.    Similarly, by assessing "Service Fees" to all food orders placed on

---

[2] https://oag.ca.gov/hiddenfees

Applebee's app or website, the advertised price for any specific food item is false.

42.    The Service Fee is particularly egregious because 1) it is not disclosed anywhere prior to the checkout screen of a consumer's purchase and 2) there is no clear service that a customer ordering food through Defendant's app or website would expect to pay for.

43.    As addressed above, upon information and belief, Defendant does not assess a service fee on consumer purchases made in its physical locations, despite the fact that are substantially more tangible services provided to a customer who is dining in a restaurant than one who is simply having their food prepared and delivered.

44.    Defendant fails to provide adequate notice of its Service Fee, a fee that does not correspond to any additional benefit provided to consumers that would not inherently be incorporated into the price of goods that are advertised.

45.    As a result, Defendant misleads consumers as to the cost of their purchase and overcharges them for superfluous "services" that are not provided.

**iii.    Defendant's CA Delivery Surcharge is misleadingly presented as a mandatory government fee, but is simply a junk, secondary delivery fee.**

46.    Lastly, Defendant's CA Delivery Surcharge is possibly its most egregious misrepresentation, as it is labelled in such a way that would indicate to reasonable consumers that it is a mandatory, governmentally imposed fee on those consumers for utilizing delivery services.

47.    In reality, it is a surreptitious tactic for Defendant and its delivery platform partners to offload ***their own*** financial obligations to provide benefits to the independent contractors they utilize for delivery services, as required under California law.

48.    Proposition 22 was a ballot initiative in California in the November 2020 election which aimed to exempt app-based transportation and delivery companies from AB5.

49.    AB5 would have required app-based delivery companies like Uber and Doordash, as well as other companies with delivery services, to classify their drivers as employees rather than independent contractors. Had AB5 remained the law, all Applebee's delivery drivers would have been guaranteed a variety of extensive benefits under state law, including overtime, sick time, health care, bargaining rights, and unemployment insurance, among others.

50.    When AB5 passed in September 2019, app-based delivery companies and companies with delivery services, including Applebee's, publicly protested and decried the law as incompatible with their business models. Desperate to avoid the profit-cutting implications of AB5, app-based delivery companies and companies with delivery services devised Proposition 22.

51.    Proposition 22 aimed to exempt app-based delivery companies from the scope of AB5. But in a concession to labor advocates, and in an effort to gain public buy-in, the Proposition also provided certain minimum protections and benefits to drivers. Those protections—while not nearly as extensive as those which would have been afforded to drivers had they been deemed employees—did guarantee drivers a higher level of benefits than they had been receiving as independent contractors prior to the passage of AB5. For example, under Proposition 22, drivers would receive 120% of the local minimum wage for each hour spent driving. Drivers would also receive limited expense reimbursement as well as a health insurance stipend, among other benefits.

52.    After months of extensive campaigning, advertising, and lobbying, Applebee's and the other similar companies ultimately got their way, and California voters passed Proposition 22, exempting Applebee's and other companies from AB5.

53.     Shortly after the passage of Proposition 22, however, Applebee's faced a problem. Proposition 22—hailed as the "compromise" that would largely exempt Applebee's from paying for the extensive benefits that otherwise would be required under California employment law—still required Applebee's to pay for certain benefits and protections that it had not previously been covering. These benefits posed a threat to Applebee's profit margin.

54.     Instead of bearing the costs of the successful passage of Proposition 22, Applebee's instead decided that its success in defeating employee classification was not enough, and began charging consumers a "CA Delivery Surcharge," implying that consumers, rather than Defendant, were required to contribute under California law to the additional benefits now owed to delivery partner contractors.

55.     The CA Delivery Surcharge is $2.00 and is added to all California delivery orders. Because California consumers have no option to avoid paying the CA Delivery Surcharge, it is falsely presented to consumers as a mandatory, government-imposed fee, when in reality, it is simply a mechanism for Defendant to surreptitiously increase its revenues.

56.     In the commentary to the "Honest Pricing Law," the California Attorney General explicitly provides that a business cannot "exclude from the advertised or listed price mandatory charges that will be used to pay business costs, such as security, rent, or salary, healthcare insurance or benefits to employees."[3] The benefits Defendant is required to pay to its independent contractors are exactly such mandatory charges, which they misrepresent as fees imposed by California law onto unknowing consumers.

57.     Applebee's has successfully, and deceptively, shifted the financial responsibility of paying for its delivery drivers' benefits away from itself, and to its consumers.

---

[3] https://oag.ca.gov/hiddenfees

58.    As a result, Applebee's materially misrepresents the costs of any purchase and misleads consumers as to the nature of purpose of its CA Delivery Surcharge fee.

### B.    Defendant Misleads Consumer Using Unlawful Drip Pricing

59.    Defendant's tactics in failing to disclose the true costs of purchases in its advertisements are a classic case of "Drip pricing". "Drip pricing" works because as research has shown, "our brains tend to fix on the price we first encountered even after we learn the total cost. And even when consumers learn about the hidden fees, they often pay up rather than shop around . . . because they figure that 'investing more time into searching for it will not be worthwhile.'" Santul Narkar, *It's a Great Deal, Before the 'Drip Pricing'*, New York Times, available at https://www.nytimes.com/interactive/2024/02/23/business/what-is-drip-pricing.html (quoting Professor David Friedman of Willamette University).

60.    Reasonable consumers like Plaintiff understand that a delivery option may necessarily incur a delivery fee. However, a reasonable consumer would expect to be provided the cost of that delivery fee and certainly would not expect to be charged a Service Fee that does not correspond to any additional benefit or service, or that an additional delivery fee masqueraded as a governmental tax in the form of the CA Delivery Surcharge will be added to their purchase.

61.    In July of 2024, California expanded its Consumer Legal Remedies Act ("CLRA") was amended to make illegal "drip pricing," which involves advertising a price that is less than the actual price that a consumer will have to pay for a good or service. California Civil Code Section 1770(a)(29). Under the new California law, it is now illegal to advertise a low price for a product, only for that product to be subject to additional or mandatory fees later. In other words, "the price listed or advertised to the consumer must be the full price that the consumer is required to pay." *See* California Department of Justice, Office of the Attorney General, *SB 478 Frequently Asked Questions*, available at https://oag.ca.gov/system/files/attachments/press-

docs/SB%20478%20FAQ%20%28B%29.pdf (last accessed July 18, 2024). As the California Department of Justice stated:

> Businesses are free to explain how they set their prices or to *subsequently* itemize the charges that make up the total price that they charge customers. However, the price they advertise or display must be the total price that customers will have to pay for the good or service. Knowing the price of a good of service is essential to competition, and displaying a price that is less than what the customer will actually be charged is deceptive.

*Id.* at p. 4 (emphasis added).

62. By assessing add-on fees like the "CA Delivery Surcharge" and a "Service Fee" in addition to a "Delivery Charge," Defendant's representation of their food and its delivery is inaccurate, as it is not encompassing of the true costs of purchase.

63. By unfairly obscuring its charges to consumers, Applebee's deceives consumers and gains an unfair upper hand on competitors that fairly disclose their true charges.

## C. The Service Fee and CA Delivery Surcharge Fee Are Junk Fees That Violate Federal Guidance

64. Applebee's fees are precisely the type of "Junk Fees" that has come under government scrutiny in recent years:

> Junk fees are fees that are mandatory but not transparently disclosed to consumers. Consumers are lured in with the promise of a low price, but when they get to the register, they discover that price was never really available. Junk fees harm consumers and actively undermine competition by making it impractical for consumers to compare prices, a linchpin of our economic system.

The White House, *The Price Isn't Right: How Junk Fees Cost Consumers and Undermine Competition*, March 5, 2024, available at https://www.whitehouse.gov/cea/written-materials/2024/03/05/the-price-isnt-right-how-junk-fees-cost-consumers-and-undermine-competition/#_ftnref3.

65. As the Federal Trade Commission said recently in its effort to combat Junk Fees:

> [M]any consumers said that sellers often do not advertise the total amount they will have to pay, and disclose fees only after they are well into completing the transaction. They also said that sellers often misrepresent or do not adequately disclose the nature or purpose of certain fees, leaving consumers wondering what they are paying for or if they are getting anything at all for the fee charged.

Fed. Trade Comm'n, *FTC Proposes Rule to Ban Junk Fees – Proposed rule would prohibit hidden and falsely advertised fees*, October 11, 2023, available at https://www.ftc.gov/news-events/news/press-releases/2023/10/ftc-proposes-rule-ban-junk-fees.

66. In its 2013 publication ".com Disclosures: How to Make Effective Disclosures in Digital Advertising, the FTC makes clear that when advertising and selling are combined on a website, and the consumer will be completing the transaction online, the disclosures should be provided before the consumer makes the decision to buy – for example, before the consumer "add[s] to shopping cart." *See* Fed. Trade Comm'n, *How to Make Effective Disclosures in Digital Advertising* at ii, 14 (Mar. 2013), available at https://www.ftc.gov/sites/default/files/attachments/press-releases/ftc-staff-revises-online-advertising-disclosureguidelines/130312dotcomdisclosures.pdf.

67. Defendant violates federal guidance by adding the Delivery Charge, Service Fee, and CA Delivery Surcharge as line items well after the consumer "add[s] to shopping cart."

68. Worse yet, Defendant's Service Fee does not correspond to any additional benefit or "service" any reasonable consumer would expect to be charged for, and its CA Delivery Surcharge is materially misrepresented as a cost imposed on consumers when in reality, it is simply a cost of doing business that Defendant is obligated to pay in order to properly compensate its staff.

69. The "CA Delivery Surcharge," deceptively represented as a governmentally-imposed tax, is, at best, a delivery fee. The Fee is used to pay delivery drivers for the benefits they are afforded under Proposition 22. A fee that is tacked on

to every order to compensate drivers in exchange for their delivery of goods is, by definition, a delivery fee. At worst, it is a Junk Fee that provides no additional benefit to consumers and instead allows Defendant to retain additional profits without adjusting its general pricing to reflect its costs.

70.    These surreptitious and unfounded Extra Fees provide no additional value to consumers. Instead, their addition, after drawing consumers in with lower advertised prices, is simply a mechanism for Defendant to surreptitiously increase its revenues with false representations.

**E.    Plaintiff Drake's Experience**

71.    Plaintiff Drake used the Applebee's website to place a food delivery order on April 15, 2023.

72.    When using the website, Plaintiff was repeatedly informed that his cart total was $27.95.

73.    However, Plaintiff's purchase included a $2.99 "Delivery Charge", a $3.31 "Service Fee" and a $2.00 "CA Delivery Surcharge" that—for the reasons described above—in fact represented additional food and delivery fees tacked on to Plaintiff's order.

74.    These Extra Fees, which were not disclosed to Plaintiff until the final checkout screen, amounted to an extra $8.30, nearly 30% of the total cost of Plaintiff's order.

75.    Plaintiff would not have made the purchase or paid as much if he had known that Applebee's would tack on additional fees, or that the true nature and purpose of the fees.

76.    If he had known the true cost of his order, he would have chosen another method or merchant for ordering his food.

**CLASS ALLEGATIONS**

77.    Plaintiff brings this action on behalf of himself and a Class of similarly situated persons. The Class is defined as follows:

> **Nationwide Class:** All consumers who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food through applebees.com or the Applebee's app, and were assessed so-called "Service Fee" and/or "CA Delivery Surcharge".

> **California Subclass:** All consumers in California who, within the applicable statute of limitations preceding the filing of this action to the date of class certification, ordered food through applebees.com or the Applebee's app, and were assessed so-called "Delivery Charge" and/or "Service Fee" and/or "CA Delivery Surcharge".

78.    Excluded from the Class is Defendant, any entities in which it has a controlling interest, any of its parents, subsidiaries, affiliates, officers, directors, employees and members of such persons' immediate families, and the presiding judge(s) in this case, and their staff. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with his motion for class certification, or at any other time, based upon, *inter alia,* changing circumstances and/or new facts obtained during discovery.

79.    **Numerosity**:  At this time, Plaintiff does not know the exact size of the Class; however, due to the nature of the trade and commerce involved, Plaintiff believes that the Class members are well into the thousands and thus are so numerous that joinder of all members is impractical.  The number and identities of Class members is administratively feasible and can be determined through appropriate discovery in the possession of the Defendant.

80.    **Commonality**:  There are questions of law or fact common to the Classes, which include, but are not limited to the following:

a.  Whether during the class period, Defendant deceptively represented its Fees for orders on Applebees.com and on the Applebee's app;

b.  Whether Defendant's alleged misconduct misled or had the tendency to mislead consumers;

c.  Whether Defendant engaged in unfair, unlawful, and/or fraudulent business practices under the laws asserted;

d.  Whether Defendant's alleged conduct constitutes violations of the laws asserted;

e.  Whether Plaintiff and members of the Classes were harmed by Defendant's misrepresentations;

f.  Whether Plaintiff and the Classes have been damaged, and if so, the proper measure of damages; and

g.  Whether an injunction is necessary to prevent Defendant from continuing to deceptively represent the amount for orders on Applebees.com and on the Applebee's app.

81.  **Typicality**:  Like Plaintiff, many other consumers ordered food for delivery from Applebee's website or mobile app, believing that the price reflected throughout the check-out process  represented the total Plaintiff and other consumer's would pay for their order. Plaintiff's claims are typical of the claims of the Class because Plaintiff and each Class member was injured by Defendant's false representations about the true nature of Applebee's food delivery service. Plaintiff and the Class have suffered the same or similar injury as a result of Defendant's false, deceptive and misleading representations. Plaintiff's claims and the claims of members of the Class emanate from the same legal theory, Plaintiff's claims are typical of the claims of the Class, and, therefore, class treatment is appropriate.

82.  **Adequacy of Representation**:  Plaintiff is committed to pursuing this action and has retained counsel competent and experienced in prosecuting and

resolving consumer class actions.  Plaintiff will fairly and adequately represent the interests of the Class and does not have any interests adverse to those of the Class.

83.    **The Proposed Class Satisfies Prerequisites for Injunctive Relief**. Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive and equitable relief with respect to the Class as a whole. Plaintiff remains interested in ordering food for delivery through Applebee's website; there is no way for him to know when or if Defendant will cease deceptively misrepresenting the cost of delivery.

84.    Specifically, Defendant should be ordered to disclose the true costs of its food and food delivery service.

85.    Defendant's ongoing and systematic practices make declaratory relief with respect to the Class appropriate.

86.    **The Proposed Class Satisfies the Prerequisites for Damages**. The common questions of law and fact enumerated above predominate over questions affecting only individual members of the Class, and a class action is the superior method for fair and efficient adjudication of the controversy.  The likelihood that individual members of the Class will prosecute separate actions is remote due to the extensive time and considerable expense necessary to conduct such litigation, especially when compared to the relatively modest amount of monetary, injunctive, and equitable relief at issue for each individual Class member.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Unjust Enrichment**
**(On Behalf of Plaintiff and All Class Members)**

87.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-86 as if fully set forth herein.

88.    To the detriment of Plaintiff and the Class, Defendant has been, and

continues to be, unjustly enriched as a result of its wrongful conduct alleged herein.

89.     Plaintiff made offers for its goods and/or services to Plaintiff and the Nationwide Class at specific prices reflected on its website, which did not include its Extra Fees.

90.     Plaintiff and the Class conferred a benefit on Defendant when they paid Defendant the Service Fee and/or the CA Delivery Surcharge, which they did not agree to and could not reasonably avoid.

91.     The Service Fee and/or the CA Delivery Surcharge did not correspond to any additional benefits provided to Plaintiff and the Nationwide Class separate from that incorporated into the price of the goods and/or services for which Defendant advertised its prices.

92.     Instead, Defendant deceptively increased its profits by misleading consumers and charging them the Service Fee and/or CA Delivery Surcharge.

93.     Defendant unfairly, deceptively, unjustly, and/or unlawfully accepted these benefits, which under the circumstances, would be unjust to allow Defendant to retain.

94.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

95.     Plaintiff and the Classes, therefore, seek disgorgement of all wrongfully obtained fees received by Defendant as a result of its inequitable conduct as more fully stated herein.

## SECOND CLAIM FOR RELIEF
### Violation of California's Unfair Competition Law
### (Cal. Bus. & Prof. Code § 17200, et seq.)
### (On Behalf of Plaintiff and the California Subclass)

96.     Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-86 as if fully set forth herein.

97.     Defendant's conduct described herein violates the Unfair Competition Law ("UCL"), codified at California Business and Professions Code section 17200, *et*

1  *seq.*

2      98.   The UCL prohibits, and provides civil remedies for, unfair competition.

3  Its purpose is to protect both consumers and competitors by promoting fair competition

4  in commercial markets for goods and services. In service of that purpose, the

5  Legislature framed the UCL's substantive provisions in broad, sweeping language.

6      99.   The UCL imposes strict liability. Plaintiff need not prove that Defendant

7  intentionally or negligently engaged in unlawful, unfair, or fraudulent business

8  practices—but only that such practices occurred.

9      100.  A business act or practice is "unfair" under the UCL if it offends an

10  established public policy or is immoral, unethical, oppressive, unscrupulous, or

11  substantially injurious to consumers, and that unfairness is determined by weighing the

12  reasons, justifications, and motives of the practice against the gravity of the harm to

13  the alleged victims.

14      101.  A business act or practice is "fraudulent" under the UCL if it is likely to

15  deceive members of the public.

16      102.  A business act or practice is "unlawful" under the UCL if it violates any

17  other law or regulation.

18      103.  Defendant committed unfair and fraudulent business acts and practices in

19  violation of Cal. Bus. & Prof. Code § 17200, *et seq.*, by affirmatively and knowingly

20  misrepresenting that the presence and nature of its Service Fee, Delivery Charge, and

21  the CA Delivery Surcharge fees.

22      104.  Defendant's acts and practices were unfair because they offend an

23  established public policy of truthful advertising and fee disclosure in the marketplace,

24  and constitute immoral, unethical, oppressive, and unscrupulous activities that are

25  substantially injurious to consumers.

26      105.  By waiting to disclose the presence of Extra Fees to consumers until the

27  end of the checkout process, Defendant has an unfair advantage over other companies

28

that reveal their true fees upfront and do not engage in the same drip-pricing schemes.

106.   Further, Defendant charged a Service Fee that does not correspond to any additional services or benefit provided to consumers and materially misrepresented in CA Delivery Surcharge as a mandatory, governmental fee when in fact, it is simply an additional delivery fee used to offset Defendant's own obligations to provide benefits to its contractors.

107.   The harm to Plaintiff and the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described herein.

108.   Defendant's conduct also constitutes an "unlawful" act under the UCL because it also constitutes a violation of sections 1770(a)(5) and (a)(9) of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code section 1750, *et seq.*

109.   Defendant's business practices as a whole are considered fraudulent because they have misled Plaintiff and the proposed Classes into paying more than they should for food delivery orders and, unless enjoined, will continue to mislead them in the future.

110.   Specifically, Defendant's assessment of the "CA Delivery Surcharge" Fee to all California delivery orders is "fraudulent" because it misleads consumers into believing that it is a mandatory, government-imposed fee. In reality, however, the CA Delivery Surcharge Fee is not government-imposed, and in fact, is a financial responsibility belonging to Defendant.

111.   Defendant has chosen to shift its responsibilities that resulted from Proposition 22 onto the consumers in order to maximize profits.

112.   Similarly, Defendant's assessment of a "Service Fee" on all delivery orders is "fraudulent" because the fee does not correspond to any additional service or benefit provided to consumers.

113.   Plaintiff relied on Defendant's misrepresentations in making his purchase.

114.   By falsely marketing its food and food delivery services, Defendant deceived Plaintiff and Class members into making purchases they otherwise would not make and paying more for those purchases than they would or should have.

115.   As a direct and proximate result of Defendant's unfair, fraudulent, and unlawful practices, Plaintiff and Class members suffered and will continue to suffer actual damages. Defendant's fraudulent conduct is ongoing and presents a continuing threat to Plaintiff and Class members that they will be deceived. Plaintiff desires to conduct further business with Defendant but cannot rely on Defendant's representations unless an injunction is issued.

116.   As a result of its unfair, fraudulent, and unlawful conduct, Defendant has been unjustly enriched and should be required to disgorge its unjust profits and make restitution to Plaintiff and Class members pursuant to Cal. Bus. & Prof. Code § 17203 and 17204.

117.   Pursuant to Business & Professions Code §§ 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their unfair, unlawful, and fraudulent practices.

118.   Plaintiff has no adequate remedy at law in part because Defendant continues to add Courier and Service fees to purchases. Plaintiff therefore seeks an injunction on behalf of the Class to prevent Defendant from continuing to engage in the deceptive and misleading practices described herein.

### THIRD CLAIM FOR RELIEF
**False and Misleading Advertising**
**(Bus. & Prof. Code §§ 17500, et seq.)**
**(On Behalf of Plaintiff and the California Subclass)**

119.   Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-86 as if fully set forth herein.

120.    California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code section 17500, states that "[i]t is unlawful for any . . . corporation . . . with intent . . . to dispose of . . . personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, or by public outcry or proclamation, or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . ."

121.    Defendant's material misrepresentations and omissions alleged herein violate Business and Professions Code section 17500.

122.    Defendant knew or should have known that its misrepresentations and omissions were false, deceptive, and misleading.

123.    Defendant's failure to disclose the Extra Fees until the last step in the purchasing process is false, deceptive, and misleading because consumers relied on the prices advertised by Defendant in making the decision to place a food delivery order, which are not accurate because the total cost of the order includes the Extra Fees.

124.    Defendant knew that by omitting any mention of (or the cost of) its Delivery Charge, Service Fee, or CA Delivery Surcharge, and hiding the Extra Fees until the end, consumers would likely be misled about the true costs of the order, and would be unlikely to change their minds about placing the order despite the increase, after they spent so much time and effort in the ordering process.

125.    Specifically, Defendant's "Delivery Charge" is misleading because Defendant prominently advertises their food delivery services but fails to mention any costs associated with it until it is time to check out.

126.    The "CA Delivery Surcharge" is misleading because it is falsely presented to consumers as a government-imposed fee and provides no real benefit or service to

consumers.

127.   The "Service Charge" is also false, deceptive and misleading because unlike the name states, the fee provides no real benefit or "service" to consumers, outside of anything that is inherent in the service of food delivery.

128.   Pursuant to Business and Professions Code sections 17203 and 17500, Plaintiff and the members of the Class, on behalf of the general public, seek an order of this Court enjoining Defendant from continuing to engage, use, or employ their deceptive practices.

129.   Further, Plaintiff requests an order awarding Plaintiff and Class members restitution of the money wrongfully acquired by Defendant by means of said misrepresentations.

130.   Additionally, Plaintiff and the Class members seek an order requiring Defendant to pay attorneys' fees pursuant to California Civil Code section 1021.5.

### FOURTH CLAIM FOR RELIEF
**Violation of California's Consumer Legal Remedies Act ("CLRA")**
**Cal. Civ. Code § 1750,** *et seq.*
**(On Behalf of Plaintiff and the California Subclass)**

131.   Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1-86 as if fully set forth herein.

132.   This cause of action is brought pursuant to the Consumers Legal Remedies Act (CLRA), California Civil Code § 1750, *et seq.*  Plaintiff and each member of the proposed Class are "consumers" as defined by California Civil Code § 1761(d). Defendant's food delivery services offered to consumers in exchange for payment are "transactions" within the meaning of California Civil Code § 1761(e). The food purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code § 1761(a). Defendants' delivery service is a "service" within the meaning of California Civil Code § 1761(b).

133.   Defendant violated and continues to violate the CLRA by engaging in the

following practices proscribed by California Civil Code § 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of food:

  a. "Representing that goods or services have . . . characteristics . . . that they do not have" (a)(5);

  b. "Advertising goods or services with intent not to sell them as advertised" (a)(9);

  c. "Representing that a transaction confers or involves rights, remedies, or obligations that it does not have or involve, or that are prohibited by law" (a)(14)

  d. "Advertising that a product is being offered at a specific price plus a specific percentage of that price unless (A) the total price is set forth in the advertisement, which may include, but is not limited to, shelf tags, displays, and media advertising, in a size larger than any other price in that advertisement, and (B) the specific price plus a specific percentage of that price represents a markup from the seller's costs or from the wholesale price of the product" (a)(20); and

  e. "Advertising, displaying, or offering a price for a good or service that does not include all mandatory fees or charges" (a)(29).

134.  Specifically, Applebee's falsely advertised the price of any given food item, and misled consumers into believing there was no extra cost for delivery by omitting any mention of its fees, or the amounts of its fees, on its website or in its pricing advertisements. Applebee's failed to inform consumers in any disclosure, at any time, that the so-called "Service Fee," "Delivery Charge," and the "CA Delivery Surcharge" would be tacked on to their purchase total at the last possible opportunity.

135.  At no time does Defendant disclose the true nature or amount of its

Service Fee, Delivery Charge or CA Delivery Surcharge; instead, it repeatedly conceals and misrepresents this material information at several steps of the transaction process. Defendant's conduct amounted to a bait & switch.

136.    Defendant's omissions regarding its Extra Fees expressly violates the CLRA, as evident from numerous explanations regarding compliance with the "Honest Pricing Law" provided by the California Attorney General.[4]

137.    Accordingly, if Defendant had any doubt as to whether it could omit mentioning the CA Delivery Surcharge, which is mispresented to consumers as a mandatory governmental charge despite being used to offset costs incurred by Defendant's own statutory obligation to provide benefits for its delivery drivers, the California Attorney General has made it very clear that Defendant could not.

138.    Similarly, Defendant's assessment of the Service Fee, Delivery Charge, and CA Delivery Surcharge, all mandatory, were not included in the initial display price, and were intentionally omitted until the final payment screen, conduct expressly prohibited under the Act and the AG's guidance.

139.    Defendant's actions should be seen not only as deceptive and fraudulent, but also as defiant and without regard for legal authority.

140.    Pursuant to § 1782(a) of the CLRA, Plaintiff's counsel notified Defendant in writing by certified mail of the particular violations of §1770 of the CLRA and demanded that it rectify the problems associated with the actions detailed above and give notice to all affected consumers of Defendant's intent to act. If Defendant fails to respond to Plaintiff's letter or agree to rectify the problems associated with the actions detailed above and give notice to all affected consumers within 30 days of the date of written notice, as proscribed by §1782, Plaintiff will move to amend his Complaint to pursue claims for actual, punitive and statutory damages, as appropriate against Defendant.  As to this cause of action, at this time, Plaintiff seeks only injunctive relief.

---

[4]*See generally* https://oag.ca.gov/hiddenfees (FAQ)

141.    Plaintiff also seeks public injunctive relief, as described above.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and the members of the Class seek an Order:

1.    Certifying the proposed Class;

2.    Declaring that Defendant is financially responsible for notifying the Class members of the pendency of this suit;

3.    Declaring the Defendant has committed the violations of law alleged herein;

4.    Providing for any and all injunctive relief the Court deems appropriate;

5.    Awarding statutory damages in the maximum amount for which the law provides;

6.    Awarding monetary damages, including but not limited to any compensatory, incidental, or consequential damages in an amount that the Court or jury will determine, in accordance with applicable law;

7.    Providing for any and all equitable monetary relief the Court deems appropriate;

8.    Awarding punitive or exemplary damages in accordance with proof and in an amount consistent with applicable precedent;

9.    Awarding Plaintiff their reasonable costs and expenses of suit, including attorneys' fees;

10.    Awarding pre- and post-judgment interest to the extent the law allows; and

11.    Providing such further relief as this Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all

issues in this complaint that are so triable as a matter of right.

Dated: May 12, 2025

By: */s/ Scott Edelsberg*
Scott Edelsberg (SBN 330990)
**EDELSBERG LAW, P.A.**
1925 Century Park E #1700
Los Angeles, CA 90067
Tel: (305) 975-3320
Email: scott@edelsberglaw.com

*Attorney for Plaintiff and the*
*Proposed Class*